SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RUBEN D. ESCALANTE, Cal. Bar No. 244596
rescalante@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:  213.620.1780
Facsimile:  213.620.1398

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
FRANCES M. K. HERNANDEZ, Cal. Bar No. 281384
fhernandez@sheppardmullin.com
650 Town Center Dr., 4th Floor
Costa Mesa, California  92626
Telephone:  714.513.5100
Facsimile:  714.513.5130

Attorney for Defendant
EXTRA SPACE MANAGEMENT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSE GARCIA, as an individual and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>EXTRA SPACE MANAGEMENT, INC., a Utah corporation; and DOES 1 through 100,<br><br>        Defendants. | Case No.:   2:18-CV-7651<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 1332(d) (CLASS ACTION FAIRNESS ACT), §§ 1441, 1446 AND 1453**<br><br>(Los Angeles Superior Court Case No. BC711990)<br><br>Complaint Filed: July 2, 2018<br>Trial Date:  None Set<br><br>[Filed concurrently with Civil Cover Sheet, Corporate Disclosure Statement, and Certificate and Notice of Interested Parties] |

-1-

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, Defendant Extra Space Management, Inc. ("Defendant"), hereby removes the above-entitled action from the Superior Court of the State of California in and for the County of Los Angeles to the United States District Court for the Central District of California.  This Court has original subject matter jurisdiction over Plaintiff's lawsuit under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C §§ 1332(d), 1441, 1446 and1453, because minimum diversity exists and the amount in controversy exceeds $5 million.  Accordingly, removal is proper based on the following grounds:

## BACKGROUND

1.      On or about July 2, 2018, Plaintiff Jose Garcia ("Plaintiff") commenced a lawsuit in the Superior Court of the State of California, County of Los Angeles, Case No. BC711990 (the "Complaint").

2.      The Complaint purports to assert claims for relief arising out of Plaintiff's employment with Defendant.  Specifically, Plaintiff brings claims for (1) failure to pay overtime; (2) failure to pay minimum wage; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to provide proper wage statements; (6) failure to pay all wages due at termination; and (7) unfair competition in violation of Business & Professions Code § 17200 *et seq*.

3.      Plaintiff brings his claims on behalf of himself and multiple putative classes.  Specifically, Plaintiff defines his putative classes[1] as the following:

---

[1]     Plaintiff's Complaint does not limit the his putative class to a geographic region and, as such, Plaintiff may be seeking to represent Defendant's current and former employees employed outside of California.  However, for the purposes of this removal, Defendant will limit its analysis to those employees employed in California.

-2-

Overtime Class:  "[A]ll of Defendants' current and former non-exempt employees who worked more than 8 hours per workday and/or 40 hours per workweek and: (i) received Incentive Pay during this corresponding time period; and/or (ii) were subject to Defendants' timekeeping policies and/or practices, during the four years immediately preceding the filing of the Complaint through the present."  (Complaint, ¶ 15(a).)

Minimum Wage Class:  "[A]ll of Defendants' current and former non-exempt employees who were subject to Defendants' timekeeping policies and/or practices, during the four years immediately preceding the filing of the Complaint through the resent [*sic*]."  (Complaint, ¶ 15(b).)

Meal Period Class:  "[A]ll of Defendants' current and former non-exempt employees who worked at least one shift in excess of 5.0 hours, during the four years immediately preceding the filing of the Complaint through the present."  (Complaint, ¶ 15(c).)

Rest Period Class:  "[A]ll of Defendants' current and former non-exempt employees who worked at least one shift in excess of 3.5 hours, during the four years immediately preceding the filing of the Complaint through the present."  (Complaint, ¶ 15(d).)

Wage Statement Class:  "[A]ll members of the Overtime Class, Minimum Wage Class, Meal Period Class, and/or Rest Period Class during the one year immediately preceding the filing of the Complaint through the present."  (Complaint, ¶ 15(e).)

Waiting Time Class:  "[A]ll of Defendants' formerly employed members of the Overtime Class, Minimum Wage Class, Meal Period Class, and/or Rest Period Class, and who separated their employment during the three years immediately preceding the filing of the Complaint through the present."  (Complaint, ¶ 15(f).)

4.    Also on or about July 2, 2018, the Court issued a Notice of Case Assignment assigning the matter to the Honorable John Shepard Wiley, Jr.

-3-

5. On or about July 9, 2018 the Court issued its Order Regarding Newly Filed Class Action and its Initial Status Conference Order.

6. On August 1, 2018, a copy of the Complaint, Summons, and Civil Case Cover Sheet was served on Defendant. True and correct copies of the Complaint, Summons, Civil Case Cover Sheet, Notice of Case Assignment, Order Regarding Newly Filed Class Action, Initial Status Conference Order, and Proof of Service are attached hereto as **Exhibits A-G**, respectively

7. On August 16, 2018, Defendant filed a Notice of Appearance and Notice of Related Case. True and correct copies of Defendant's Notice of Appearance and Notice of Related Case are attached hereto as **Exhibits  H-I**, respectively.

8. On August 30, 2018, Defendant answered Plaintiff's Complaint. A true and correct copy of Defendant's Answer is attached hereto as **Exhibit J**.

## TIMELINESS OF REMOVAL

9. This Notice of Removal is timely filed as it is filed within thirty (30) days of the first receipt by a Defendant of a copy of a paper (in this case, the Complaint) that revealed this case was properly removable. 28 U.S.C. § 1446(b). Specifically, Plaintiff served his Complaint and related filings on Defendant on August 1, 2018. This Notice of Removal is being filed on August 31, 2018, which is 30 days after the service of the Complaint.

## MINIMAL DIVERSITY EXISTS UNDER CAFA

10. The Court has original jurisdiction of this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part in 28 U.S.C. § 1332(d)(2). Specifically, this action is removable, pursuant to the provisions of 28 U.S.C. §1441(a), as the amount in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which at least one class member is a citizen of a State different from that of at least one defendant.

-4-

SMRH:487636997.1                                                     DEFENDANT'S NOTICE OF REMOVAL

11.    To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists – i.e., that one putative class member is a citizen of a different state from that of one defendant.  28 U.S.C. § 1332(d)(2); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement). Here, not only does minimal diversity exist, but complete diversity of citizenship exists because Plaintiff is a citizen of California, while Defendant is a citizen of only Utah.

12.    **Plaintiff's Citizenship:**  Plaintiff is, and at all times since the commencement of this action has been, a citizen and resident of the State of California.  (Complaint, ¶ 3 ("Plaintiff was, and currently is, a California resident, residing in the County of Los Angeles.").)  To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States and (b) a domiciliary of one particular state.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Plaintiff was domiciled in California while he worked for Defendant in California and is, or was at the initiation of this civil action, a citizen of California.

13.    **Defendant's Citizenship:**  Defendant is not a citizen of California.  As a corporation, Defendant is deemed to be a citizen of the state in which it has been incorporated and the state in which it has its principal place of business.  28 U.S.C. § 1332(c)(1).  In *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that "principal place of business" "[refers] to the place where a corporation's officers direct, control, and coordinate the corporation's activities." Further, "in practice," the principal place of business "should normally be the place

-5-

DEFENDANT'S NOTICE OF REMOVAL

where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.* Here, at all relevant times – both at the time of the filing of the Complaint and now at the time of removal - Defendant was and remains incorporated in the state of Utah, with its principal place of business located in Salt Lake City, Utah. Defendant's corporate headquarters, located in Salt Lake City, Utah, is the actual center of direction, control and coordination of all major human resources, payroll, legal and administrative functions. The respective officers for these departments work in Salt Lake City, Utah, and are responsible for developing policies and protocols for Defendant's operations. Moreover, Defendant's Board of Directors meets in Salt Lake City, Utah.

Because Defendant's principal place of business is in Salt Lake City, Utah, and Defendant is incorporated in Utah, Defendant is not a citizen of California for diversity purposes.

14. **Doe Defendants:** Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe Defendants 1 through 20, inclusive, does not deprive this Court of jurisdiction.

15. Thus, the minimal diversity requirement of the CAFA is satisfied here because a member of the plaintiff class is a citizen of a state different from Defendant. 28 U.S.C. § 1332(d)(2)(A); *see Davis v. Chase Bank U.S.A.*, 453 F.Supp. 2d 1205, 1208 (C.D. Cal. 2006) (holding that minimal diversity exists where named plaintiff and defendant are citizens of different states).

## THE CAFA NUMEROSITY REQUIREMENT IS MET HERE

16. With respect to the CAFA numerosity requirement, Plaintiff alleges multiple putative classes generally consisting of "all of Defendants' current and

-6-

former non-exempt employees … during the four years immediately preceding the filing of the Complaint through the present." (Complaint, ¶ 15.)  Defendant employed approximately 1,269 non-exempt employees in California during the four-year period that preceded the filing of this lawsuit.  Therefore, the numerosity requirement under the CAFA is satisfied as Plaintiff's putative classes consists of more than 100 individuals.  28 U.S.C. § 1332(d)(5)(B).

## THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

17.    Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a class action exceed the sum of $5 million.  *See* 28 U.S.C. § 1332(d)(6).  In the removal context, the assessment of whether the amount-in-controversy requirement is satisfied "is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  The appropriate measure of the jurisdictional amount in controversy is "the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint." *Jackson v. American Bankers Ins. Co. of Florida*, 976 F.Supp. 1450, 1454 (S.D. Ala. 1997) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)).  The amount in controversy is not determined by "the low end of an open-ended claim," but by "a reasonable reading of the value of the rights being litigated." *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993).  A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not contain evidentiary submissions. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 548 (2014).[2] Moreover, when assessing the amount in controversy for purposes of CAFA, the

---

[2]    There is no requirement at the removal stage to attach evidence to support the allegations in the removal.  Rather, removal is governed by Rule 8 requiring only a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co.*, *LLC*, 135 S. Ct. 547, 553 (2014).

-7-

Senate Committee Report accompanying CAFA, S. Rep. No. 109-14, makes clear that 28 U.S.C. § 1332(d) should be "interpreted expansively." S. Rep. No. 109-14, at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40.[3]

18. Here, the Complaint does not allege a specific amount of monetary relief sought from Defendant. However, although Defendant denies there is any basis in law or fact for the claims alleged in Plaintiff's Complaint, the allegations therein make it clear that the aggregated amount *in controversy* for the putative class for just four of the seven asserted claims exceeds $5,000,000, exclusive of interest and costs, as demonstrated below. *See* 28 U.S.C. § 1332(d)(6) ("the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000."). A reasonable evaluation of the amount in controversy of Plaintiff's asserted claims shows that the amount in controversy easily exceeds the jurisdictional minimum.

19. The "Putative Class Members" in the instant action generally consist of "all of Defendants' current and former non-exempt employees … during the four years immediately preceding the filing of the Complaint through the present." (Complaint, ¶ 15.) The lawsuit was filed on or about June 5, 2018, so the "Putative Class Period" begins on or about July 2, 2014 and continues on through the present, resulting in an ever growing putative class.

(a) **General Statistics**. In California, Defendant employed approximately 1,269 non-exempt employees during the four years preceding the filing of the Complaint through the present. This figure was derived from a spreadsheet that listed all Putative Class Members, the Putative Class Members' dates of employment, the locations they worked, and their rates of pay. This spreadsheet

---

[3] As stated in the CAFA Senate Report, "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." S. Rep. No. 109-14, at 42.

-8-

was then cross-checked against Defendant's timekeeping records to ensure its accuracy.

Meal Period Related Statistics.  The Putative Class Members worked a total of at least 502,462 shifts in excess of 5.0 hours during the Putative Class Period. This figure was calculated based on data located and maintained in Defendant's timekeeping databases.  The average hourly rate earned by Putative Class Members who worked at least one shift in excess of 5.0 hours during the Putative Class Period was approximately $14.59.  This figure was reached by calculating the individual average hourly rate paid to each of the Putative Class Members who worked at least one shift in excess of 5.0 hours during the Putative Class Period, totaling the individual average hourly rates, and then dividing that sum by the total number of Putative Class Members who worked at least one shift in excess of 5.0 hours during the Putative Class Period.  In light of the various hourly rates paid to the Putative Class Members during the Putative Class Period, using the average hourly rate to calculate the amount in controversy efficiently and accurately accounts for this range.  In any event, even if the below calculations utilize the lowest hourly rate paid to Putative Class Members who worked at least one shift in excess of 5.0 hours during the Putative Class Period, which was $9.96 per hour,[4] the amount in controversy would still far exceed the jurisdictional minimum.

Rest Period Related Statistics.  The Putative Class Members worked a total of at least 517,465 shifts in excess of 3.5 hours during the Putative Class Period.  This figure was calculated based on data located and maintained in Defendant's timekeeping databases.  The average hourly rate earned by Putative Class Members who worked at least one shift in excess of 3.5 hours during the Putative Class Period was approximately $14.59.  This figure was reached by calculating the individual average hourly rate paid to each of the Putative Class Members who worked at least

---

[4]   This figure was derived from the spreadsheet described above.

-9-

one shift in excess of 3.5 hours during the Putative Class Period, totaling the individual average hourly rates, and then dividing that sum by the total number of Putative Class Members who worked at least one shift in excess of 3.5 hours during the Putative Class Period.  In light of the various hourly rates paid to the Putative Class Members during the Putative Class Period, using the average hourly rate to calculate the amount in controversy efficiently and accurately accounts for this range.  In any event, even if the below calculations utilize the lowest hourly rate paid to Putative Class Members who worked at least one shift in excess of 5.0 hours during the Putative Class Period, which was $9.96 per hour,[5] the amount in controversy would still far exceed the jurisdictional minimum.

Waiting Time Related Statistics.  The total number of Putative Class Members whose employment ended between July 2, 2015 and present is at least 619.  This figure was derived from the spreadsheet described above.  The average hourly rate earned by Putative Class Members whose employment ended between July 2, 2015 and present was approximately $14.40.  This figure was reached by calculating the individual average hourly rate paid to each of the Putative Class Members whose employment ended between July 2, 2015 and present, totaling the individual average hourly rates, and then dividing that sum by the total number of Putative Class Members whose employment ended between July 2, 2015 and present.  In light of the various hourly rates paid to the Putative Class Members during the Putative Class Period, using the average hourly rate to calculate the amount in controversy efficiently and accurately accounts for this range.  In any event, even if the below calculations utilize the lowest hourly rate paid to Putative Class Members whose employment ended between July 2, 2015 and present, which

---

[5]    This figure was derived from the spreadsheet described above.

-10-

DEFENDANT'S NOTICE OF REMOVAL

was $10.50 per hour,[6] the amount in controversy would still far exceed the jurisdictional minimum.

Wage Statement Related Statistics.  The total number of Putative Class Members between July 2, 2017 and present is at least 746.  This figure was derived from the spreadsheet described above.  The total number of wage statements issued to Putative Class Members between July 2, 2017 and present is 15,141.  This figure was derived from a review of Defendant's payroll records.

(b)   **Meal Periods.**  In Plaintiff's Third Cause of Action, Plaintiff alleges that Defendant failed to provide non-exempt employees with legally compliant meal periods and, therefore, owe penalty pay.  (Complaint, ¶¶ 31-33.)  Specifically, Plaintiff alleges that "Defendants failed in their affirmative obligation to provide all of their hourly non-exempt employees … with all required meal periods …  As a result, Defendants are responsible for paying premium compensation for meal period violations."  (*Id.* at ¶¶ 32-33.)  Plaintiff also alleges that "[W]hen Plaintiff was able to take a meal period, Plaintiff's meal periods were frequently interrupted due to work demands.  Plaintiff was also required to keep a company cell phone with him at all times and was expected to answer and respond to calls when he was called, meaning that Plaintiff was never truly relieved of all duties … Plaintiff would frequently receive work calls on his company cell phone during meal periods" and that the same things would occur with other non-exempt employees. (*Id.* at ¶¶ 12, 31-32.)

Under California law, an employer who fails to provide a meal period must pay "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period was not provided."  Cal. Lab. Code § 226.7(b).  During the Putative Class Period, Putative Class Members worked at least 502,462 shifts in excess of 5.0 hours.  Therefore, the potential value of

---

[6]   This figure was derived from the spreadsheet described above.

-11-

DEFENDANT'S NOTICE OF REMOVAL

Plaintiff's claim for missed meal periods may be calculated by multiplying the 502,462 shifts worked over 5 hours (during which Plaintiff alleges employees were not provided compliant meal periods) by one hour of pay at the average hourly rate earned by the Putative Class Members during the Putative Class Period ($14.59) = **$7,330,920.58**. Furthermore, even if this calculation utilized the lowest hourly rate paid to Putative Class Members during the Putative Class Period ($9.96) (instead of the more accurate average hourly rate), this claim alone meets the jurisdictional minimum: 502,462 shifts x $9.96 = **$5,004,521.52**.

(c)      **Rest Breaks.**  In Plaintiff's Fourth Cause of Action, Plaintiff alleges that Defendant failed to permit employees to take legally compliant rest periods and, therefore, owe penalty pay.  (Complaint, ¶¶ 34-37.)  Specifically, Plaintiff alleges that "Due to their unlawful rest period policies and/or practices, Defendants did not authorize and permit Plaintiff and members of the Rest Period Class to take all rest periods.  …  The foregoing violations create an entitlement to recovery by Plaintiff and members of the Rest Period Class … for the unpaid amount of rest period premiums." (*Id*. at ¶¶ 36-37.)  Plaintiff also alleges that "Plaintiff was not authorized and permitted to take <u>any</u> rest periods, as he was not authorized and permitted to take any duty-free breaks other than meal periods.  …  [D]ue to the practical realities of frequently being the sole employee on duty at the facility, it was not possible for Plaintiff to be relieved of all duties to take a rest period … Plaintiff was required to keep a company cell phone with him at all times and was expected to answer and respond to calls, meaning he was never truly relieved of all duties" and that the same things would occur with other non-exempt employees.  (*Id*. at ¶¶ 13, 34, 36.)

Under California law, an employer who fails to provide a rest period must pay "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period was not provided."  Cal. Lab. Code § 226.7(b).  During the Putative Class Period, Putative Class Members worked at least 517,465

-12-

shifts in excess of 3.5 hours.  Therefore, the potential value of Plaintiff's claim for missed rest periods may be calculated by multiplying the 517,465 shifts worked over 3.5 hours (during which Plaintiff alleges employees were not provided compliant rest periods) by one hour of pay at the average hourly rate earned by the Putative Class Members during the Putative Class Period ($14.59) = **$7,549,814.35**.  Furthermore, even if this calculation utilized the lowest hourly rate paid to Putative Class Members during the Putative Class Period ($9.96) (instead of the more accurate average hourly rate), this claim alone still exceeds the jurisdictional minimum: 517,465 shifts x $9.96 = **$5,153,951.40**

(d)    **Wage Statements.**  In Plaintiff's Fifth Cause of Action, Plaintiff alleges that "Defendants knowingly and intentionally, as a matter of uniform policy and practice, failed to furnish Plaintiff and members of the Wage Statement Class with accurate and complete itemized wage statements that included, among other requirements, all overtime and minimum wages and meal and rest period premium wages earned."  (Complaint, ¶ 39.)

The wage statement statute, Labor Code § 226, provides for penalties in the amount of $50 for each initial alleged wage statement violation to an employee, and $100 for each subsequent violation, and has a one year statute of limitations.  From one year prior to the filing of the Complaint to the present, Putative Class Members received approximately 15,141 wage statements.  This figure was derived from the spreadsheet described above.  Even only applying the lower $50 initial penalty to each wage statement, this claim still amounts to **$757,050.00** in alleged penalties.

(e)    **Waiting Time Penalties.**  In Plaintiff's Sixth Cause of Action, Plaintiff alleges that Defendant failed to pay all wages to employees due upon separation of employment.  (Complaint, ¶¶ 42-45.)  Specifically, Plaintiff alleges that "Defendants failed to timely pay Plaintiff and members of the Waiting Time Class all of their earned wages at the time of termination …  [A]s a matter of uniform policy and practice, Defendants continue to fail to pay members of the Waiting

-13-

Time Class all earned wages at the end of employment in a timely manner" and Defendant must pay Plaintiff and members of the Waiting Time Class "wages up to thirty (30) days from the time wages were due." (*Id*. at ¶¶ 44-45.)

The total number of Putative Class Members whose employment ended between July 2, 2015 and present is at least 619. The average hourly rate earned by Putative Class Members whose employment ended between July 2, 2015 and present was approximately $14.40 and the lowest hourly rate was $10.50. Since the vast majority of shifts worked by Putative Class Members were over five (5) hours long, a conservative calculation of the Waiting Time Subclass members' regular daily wages amounts to at least $72.00 per day ($14.40 average hourly rate multiplied by at least 5 hours per day). Therefore, the potential value of Plaintiff's claim for waiting time penalties may be calculated using the following formula: $72.00 regular daily rate x 30 days of penalties x 619 Waiting Time Subclass Members = **$1,337,040.00**. Furthermore, even if this calculation utilized the lowest hourly rate paid to Putative Class Members during the Putative Class Period ($10.50) (instead of the more accurate average hourly rate), the potential value of this claim is still significant: $52.50 regular daily rate x 30 days of penalties x 619 Waiting Time Subclass Members = **$974,925.00**.

20. Solely including the claims for missed meal periods, missed rest periods, inaccurate wage statements, and waiting time penalties, the total amount in controversy for Plaintiff's claims is well over **$16.9 million**. Furthermore, even if these calculations utilize the lowest hourly rate paid to Putative Class Members during the Putative Class Period (instead of the more accurate average hourly rate), the total amount in controversy for Plaintiff's claims would still be well over **$11.8 million**. Accordingly, there is "a reasonable probability that the stakes exceed" $5,000,000. *Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446, 449 (7th Cir. 2005). Moreover, these summary figures are conservative because they do not factor in the amount in controversy for Plaintiff's four other claims (including

-14-

putative class claims for unpaid overtime, failure to reimburse business expenses, and failure to pay minimum wages), or the amount of likely attorneys' fees, all of which may also be taken into account when determining the amount in controversy. *Galt G/S v. JSS Scandavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Also, these summary figures are conservative because, as drafted, Plaintiff's Putative Class Members could include Defendant's current and former employees that were employed outside of California. Accordingly, removal is proper as a matter of law. 28 U.S.C. § 1332(d).

## NO CAFA EXCEPTIONS APPLY

21. CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(5), (9). However, none of these exceptions are applicable here.

22. The first is a discretionary exception based on the number of putative class members found in the state where the action was filed. *See* 28 U.S.C. § 1332(d)(3). However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed." *Id*. Here, the action was originally filed in California and, as noted above, Defendant is not a citizen of California. Thus, this exception does not apply.

23. Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed. However, these exceptions, too, only apply where all primary defendants, or at least one defendant whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class, is a "citizen of the State in which the action was originally filed." *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and 1332(d)(4)(B). Given that this action was originally filed in California, and Defendant is not a California citizen, these exceptions also do not apply.

-15-

24. Additionally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants that are government entities, or putative classes which number less than 100 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(5)(A)-(B). Because Defendant is not a governmental entity, and the proposed class exceeds 100 individuals, these exceptions also do not apply.

25. Lastly, 28 U.S.C. § 1332(d)(9) presents exceptions for cases involving securities, and/or internal affairs or corporate governance. See 28 U.S.C. §§ 1332(d)(9)(A)-(C). This case involves employment claims, not securities, internal affairs, or corporate governance. (*See* Complaint.) Thus, these exceptions also do not apply.

### VENUE

26. Venue lies in the Central District of California pursuant to 28 U.S.C. § 1441, 1446(a), and 84(c)(3). This action originally was originally filed in the Superior Court of the State of California, County of Los Angeles.

### NOTICE OF REMOVAL

27. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Orange.

28. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as the following exhibits, including the Complaint (**Exhibit A**), Summons (**Exhibit B**), Civil Case Cover Sheet (**Exhibit C**), Notice of Case Assignment (**Exhibit D**), Order Regarding Newly Filed Class Action (**Exhibit E**), Initial Status Conference Order (**Exhibit F**), Plaintiff's Proof of Service (**Exhibit G**), Defendant's Notice of Appearance (**Exhibit H**), Defendant's Notice of Related Cases (**Exhibit I**), and Defendant's Answer (**Exhibit J**).

-16-

**WHEREFORE**, Defendant requests that the above action pending before the Superior Court of the State of California for the County of Orange be removed to the United States District Court for the Central District of California.

Dated:  August 31, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        */s/ Ruben D. Escalante*

RUBEN D. ESCALANTE
FRANCES M. K. HERNANDEZ
Attorneys for Defendant
EXTRA SPACE MANAGEMENT, INC.

-17-